1  Donald S. Edgar, Esq. (State Bar No. 139324)
   Jeremy R. Fietz, Esq. (State Bar No. 200396)
2  Rex Grady, Esq. (State Bar No. 232236)
   **THE EDGAR LAW FIRM**
3  408 College Avenue
   Santa Rosa, CA 95401
4  Telephone: (707) 545-3200
   Facsimile: (707) 578-3040
5
   Attorneys for Plaintiff
6  WENDY D. WHITSON, individually
   and on behalf of all others similarly
7  situated

8
                   UNITED STATES DISTRICT COURT
9
              FOR THE NORTHERN DISTRICT OF CALIFORNIA
10

11

12 | WENDY D. WHITSON, individually and on behalf of all others similarly situated, ) | Case No. C-07-05597 CW
13 | | "Unlimited Civil"
14 | Plaintiff, )
15 | | **PLAINTIFF'S OPPOSITION, WITH POINTS AND AUTHORITIES, TO DEFENDANT'S MOTION TO DISMISS COUNTS I, II, III, and IV OF THE CAUSES OF ACTION OF PLAINTIFF'S COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**
16 | v. )
17 | BUMBO, BUMBO LIMITED, BUMBO (PTY) LTD., and TARGET CORPORATION, )
18 | |
19 | | Date: January 17, 2008
   | | Time: 2:00 p.m.
20 | Defendants. ) | Location: Ct. Room 2, 4th Floor
   | | Judge: Hon. Claudia Wilken

21

22

23   Plaintiff has filed a Complaint containing nation-wide and state-wide causes of action arising

24 out of the sale of the Bumbo Baby Sitter by the Moving Party Defendant. The Moving Party has

25 requested that this Court dismiss Plaintiff's nation-wide causes of action (leaving intact Plaintiff's

26 state wide claims). The Moving party states that "Plaintiff's attempt to encompass the consumer

27 protection, express warranty, implied warranty, and unjust enrichment laws of all state jurisdictions

28

renders her class facially unmanageable." (See Defendant's *Notice of Motion and Motion to Dismiss Counts I, II, III, and IV*, at 2:5-6).

Manageability is a true and significant concern for the Courts. It should be of no less concern to this Court. And yet, there is a time and a place for the expression of such concern. That time and that place are not now, at the pleading stage of this litigation. Modernly, pleading is merely required to provide notice to the opposing party of the allegations made against him, so as to permit him an opportunity to respond and then prepare his case accordingly. Courts generally view pleadings as true on their face, and will only strike them, or dismiss them, if there is a clear defect that disqualifies a particular claim or cause of action. Failing to allege any damage in a negligence action, or a breach of an agreement in a contract action, for instance, would be grounds for granting a motion to strike or dismiss.

In Plaintiff's Complaint no such defects appear. The causes of action at issue are agglomerations of state causes of action, derived from common sources, such as uniform statutes or universally accepted common law. No where in the Moving Party's Motion does the Moving Party argue that these agglomerations have no basis in the law of this country or this State. Instead, what the Moving Party argues is that Plaintiff's nation-wide causes of action are not "manageable." In other words, they may be proper causes of action on their face, but, when the time comes to actually litigate them following their inclusion in the Complaint, and then trying them, the issue of manageability will become not only problematic, but insurmountable.

The Moving Party sites a number of cases to support its position. One case it cites is a State (not Federal) case: Osborne v. Subaru of America (1988) 198 Cal.App.3d 646, 243 Cal.Rptr. 815. In that case, the Court said "when legal questions vary from state to state and hence require the trial court to make diverse legal rulings on an emerging theory of recovery in a multitude of jurisdictions, the questions of law necessarily would be more individual than common to all." The Moving Party in the case at bar argues that the various state laws comprising the grounds for liability in each of the contested causes of action, though similar on their face, contain variations, both expressed in the language of the law, or discerned by Courts who have been asked to interpret and construe that

language. The result, says the Moving Party, has been a veritable babel, or confusing of the tongues, so extreme that no universal translation is possible. The Moving Party, however, only addresses this issue generally, with but the merest nod of the head to those particulars on which any convincing case depends. The Moving Party, for example, states that "various laws contain different scienter requirements," but then fails to identify which ones. The Moving Party states that while Plaintiff assumes "omissions" are actionable under each State's laws, "at least one State has expressly held otherwise"– as if so slight a variation, if true, renders the entire nation-wide action impossible. The Moving Party also notes that some of the State laws Plaintiff seeks to use in framing its lawsuit actually prohibit or restrict private actions," but then only provides an example or two. Finally, statutes of limitation are said, without much in the way of analysis or enumeration, to differ from State to State.

This is all very interesting, and perhaps relevant, but not at the pleading stage, and at least not without a more exhaustive dissertation on the distinctions among various state laws. Mere conclusive commentary is not enough. What the Moving Party has done is identify the barest of distinctions between the general claims of the Plaintiff and the laws comprising those claims and then asserted that these few distinctions prove no such action can be brought. The Moving Party has merely hinted at unmanageability in the future. It has not proved it.

The case law the Moving Party sites in favor of a finding of unmanageability, it should be noted, does not advance its argument that the pleadings should be stricken or certain causes of actions dismissed. The cases themselves are appellate level cases, dealing not with pleading issues, but with the issue of class certification. The cases involve attempts by plaintiffs to bring nation-wide class actions relying on each State's common law or statutory law and merging them into a single cause of action, just as Plaintiff has done in this case. Though each case cited ends in a determination that class certification was not proper, the fact evident in virtually all of the cited cases is that each Plaintiff had actually managed to successfully plead their hybrid causes of action, presumably overcoming any objections at the pleading stage. It was only at the *class certification* stage that they were required to demonstrate the manageability of their causes as class actions. And, at the trial court

level, most of them managed to do this. How do we know? We know because almost all of the cases sited by the Moving Party were cases on appeal, brought (mostly) by Defendants seeking to <u>overturn</u> trial court class certification orders. In other words, if the Plaintiffs had not succeeded in pleading their nation-wide causes of action, there would have been nothing to certify, and no certification order to appeal.

The cases sited by the Moving Party demonstrate that manageability is not an issue to be considered or resolved at the mere pleading stage. Manageability is an issue to be considered and resolved later. In the cases cited by the Moving Party, manageability was definitely an issue considered at the certification stage. And at that stage, in most of the cases cited, the trial court had actually granted certification. It was the Appellate Courts which said otherwise. And why did they say otherwise? Was it because the Appellate Courts found that the nation-wide causes of action were not recognized or cognizable causes of action for which relief could be granted. No. The Appellate Court ruled as they did, against *Certification*, because the Plaintiffs in those cases had failed, in the Appellate Courts' view, to meet their burden of demonstrating manageability.

Let us look at one case sited several times by the Moving Party: *Tylka v. Gerber Products Co.* (1998) 178 F.R.D. 493. The case is especially relevant because it originated in the Northern District of California. It was a case in which the Plaintiff had sought relief on each State's common law prohibition against fraud, as well as each State's consumer protection Statute, and which the Northern District had certified for class treatment. The Defendant's appealed the Certification order, arguing that "individual issues of law will predominate if the Court certifies a nationwide class possibility involving the separate application of 50 consumer fraud statutes and 50 common law fraud torts." (*Id.*, at 497). When hearing the appeal, the Ninth District Court of Appeals considered the Plaintiff's proffered plan to manage the complexities arising from the variations inherent in each State's common and positive laws. After doing so, it expressed its doubt that the Plaintiff had succeeded in crafting such a plan.

> Although the Plaintiffs repeatedly state in conclusory fashion that the

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS          07-05597 CW

'consumer fraud laws reduce to general and manageable patterns,' no sincere effort is made by Plaintiffs to create such an amalgam. Indeed, it is not until Plaintiffs' sur-rejoinder that a single paragraph is offered describing four subclasses under which the instant litigation could be managed. This 'proffer' seems overly simplistic in light of the nuances and differences presented by the consumer fraud statutes... [T]he court is not satisfied that Plaintiffs' have met their burden under Rule 23 (b)(3)." (*Id.*, at 498).

The Court in *Tylka* did not state that such actions as brought by the Plaintiff in that case, or, by implication, any other case (including the case at bar), were inherently unmanageable. What the Court said was that the proffer of a plan made by the Plaintiff touching upon how their complex case was to be managed was not satisfactory— that the Plaintiff had not met his burden to demonstrate manageability of the action as a class action. Implied in its ruling was the possibility that the Plaintiff might have been able to craft a plan that passed Rule 23 muster. In *Tylka*, however, the Ninth District Court did not believe the Plaintiff had actually done so.

It is Plaintiff's view that Defendant's request of the Court is not one that should be granted, largely because Defendant relies on a standard that is not entirely relevant at the pleading stage. Instead, the standard it relies on, and which it wishes the Court to rely on, is one that is appropriate when adjudicating *motions for Class Certification*. In such motions, the issue of manageability is one that would be fully briefed by both parties, with a proffer made by the Plaintiff of a plan of management to be scrutinized carefully by the Court. It is simply premature for the Court to rule on the manageability of the action at bar as a class action. All that maters at this stage in the litigation is whether the Complaint, on its face, is without defect. Since there is no facial defect in Plaintiff's pleading, and since the Defendant has not even argued that its nation-wide causes of action are causes that are not recognized by the law, Plaintiff requests that the Defendant's Motion to dismiss these causes of action from Plaintiff's Complaint be denied.

1 | Dated: 21 December 2007

**THE EDGAR LAW FIRM**

*/s/ Jeremy R. Fietz*

Donald S. Edgar, Esq.
Jeremy R. Fietz, Esq.
Rex Grady, Esq.
Attorneys for Plaintiff