1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WENDY D. WHITSON, individually and on
behalf of all others similarly situated,

            Plaintiff,

  v.

BUMBO, BUMBO LIMITED, BUMBO
(PTY) LTD., and TARGET CORPORATION,

            Defendants.
_____/

No. C 07-05597 MHP

**MEMORANDUM & ORDER**

**Re: Defendant Bumbo (Pty) Ltd.'s Motion
to Dismiss and Defendant Target
Corporation's Motion for Judgment on the
Pleadings**

       In this action, Plaintiff Wendy D. Whitson asserts causes of action for violation of state

consumer protection laws, breach of express and implied warranties and unjust enrichment.

Defendant Bumbo (Pty) Ltd. ("Bumbo-Pty") moves to dismiss the complaint, while defendant

Target Corporation ("Target") moves for judgment on the pleadings.  Having considered the parties'

arguments and for the reasons stated below, the court enters the following memorandum and order.

<u>BACKGROUND</u>

I.     <u>The "Bumbo Baby Sitter"</u>

       In or around February 2007, plaintiff Whitson purchased a Bumbo Baby Sitter ("Bumbo

seat") at a Target store in Rohnert Park, California, for approximately $40.  Complaint ¶¶ 10, 22.

The Bumbo seat is a soft foam chair described by its manufacturer, defendant Bumbo-Pty, as

"uniquely designed according to the baby's posture to seat babies independently in an upright sitting

position, from as young as 3 months up to an age of approximately 14 months . . . thereby providing a snug and cozy environment for your baby." Id. ¶ 16.  The seat is made of a single piece of molded foam, and it is designed with a seat lower than the leg openings so that children will remain secure. Id. ¶ 15.  The bottom of the seat is round and flat and is about 15 inches in diameter.  Id.

The Bumbo seat is available in yellow, blue, purple, aqua, and lime.  On the front of the seat, the word "Bumbo" appears in raised lettering with a cartoon image of a happy elephant.  Id.  The box in which the Bumbo seat is sold includes warnings in nine languages, including English, stating, among other things: "WARNING: Do not use on a raised or uneven surface . . . ." Id. ¶ 18; Docket Number 79 (Bumbo-Pty's Request for Judicial Notice ("RJN")), Exh. C (picturing the box).[1] Affixed to the back of the Bumbo seat itself is a warning label, in less than eight-point font, stating: "WARNING.  NEVER USE ON A RAISED SURFACE.  NEVER USE AS A CAR SEAT OR BATH SEAT.  DESIGNED FOR FLOOR LEVEL USE ONLY.  NEVER LEAVE YOUR BABY UNATTENDED AS THE SEAT IS NOT DESIGNED TO BE TOTALLY RESTRICTIVE AND MAY NOT PREVENT RELEASE OF YOUR BABY IN THE EVENT OF VIGOROUS MOVEMENT."  Complaint ¶ 19; Bumbo-Pty's RJN, Exh. D (picturing the warning label).  Neither the warning on the box nor the warning affixed to the Bumbo seat are accompanied by the "standard" warning symbol of an exclamation point inserted within a yellow triangle.  Complaint ¶¶ 18, 19.  Whitson does not allege that there have been any changes to the warnings provided during the time since she purchased her Bumbo seat.

At the same time, photographs of three babies seated in Bumbo seats which are placed atop a table appear on the box in which the Bumbo seat is packaged and sold.  Id. ¶ 20.  Also, a website maintained by or on behalf of defendants (during some unspecified time frame) included images of babies in Bumbo seats on tables, chairs, and stools.  Id.  Target maintained a website which allowed consumers to purchase Bumbo seats online, but there is no allegation that said website contained any pictures of babies seated in Bumbo seats.  See id. ¶ 21.

Following Whitson's February 2007 purchase of a Bumbo seat, lawsuits were filed in various jurisdictions alleging damages from severe physical injuries to babies who fell out of Bumbo seats.

2

**United States District Court**
For the Northern District of California

1    Id. ¶ 23.  In October 2007, the Consumer Products Safety Commission (CPSC) recalled the Bumbo

2    seat, noting that out of "about 1 million" units sold, the CPSC had "received 28 reports of young

3    children falling out of the Bumbo Baby Sitter seat, including three skull fractures, which occurred

4    when children fell out of chairs that had been placed on tables." Id. ¶ 24; Bumbo-Pty's RJN, Exh. B

5    (October 25, 2007, CPSC release, referenced in Whitson's complaint).  The CPSC's remedy for this

6    hazard was to advise consumers never to use the Bumbo seat on an elevated surface or leave a child

7    unattended.  Bumbo-Pty's RJN, Exh. B.  The CPSC also noted that consumers could contact Bumbo

8    to obtain, free of charge, a warning label to affix to the seat, stating: "WARNING – Prevent Falls;

9    Never use on any elevated surface." Id.

10       In her complaint, Whitson makes no allegation that any child ever used the Bumbo seat she

11   purchased, that any child fell from her baby seat or that Whitson actually saw or relied upon any

12   images showing babies sitting on elevated surfaces in Bumbo seats.

13

14   II.     Procedural History

15       Plaintiff Whitson filed her complaint in this court on November 2, 2007.  The court related

16   Whitson's action to another action pending in this court, Lamm v. Bumbo, No. C 07-04807 MHP.[2]

17   The Lamm and Whitson plaintiffs attempted to serve process on Bumbo-Pty, a South African

18   company.  Bumbo-Pty moved to dismiss both complaints for lack of personal jurisdiction and to

19   quash plaintiffs' attempt to serve process on Bumbo-Pty.  On May 13, 2008, the court denied

20   Bumbo-Pty's motion to dismiss for lack of personal jurisdiction, granted Bumbo-Pty's motion to

21   dismiss for insufficient service of process, quashed the attempted service, and ordered plaintiffs to

22   perfect service upon Bumbo-Pty within 30 days.  See Docket Number 63 (Order).  On September 4,

23   2008, Target filed an answer to Whitson's complaint.  On September 11, 2008, Bumbo-Pty filed a

24   motion to dismiss Whitson's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Target

25   moved for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), on

26   September 22, 2008.  The court heard oral argument on these motions on November 24, 2008.

27

28

LEGAL STANDARD

I.      Motion to Dismiss

        A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  Because Rule 12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive merits, "a court may [typically] look only at the face of the complaint to decide a motion to dismiss." Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002).  However, a court may rely upon the doctrine of "incorporation by reference" to consider documents "that were referenced extensively in the complaint and were accepted by all parties as authentic." Id.

        A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, ___ U.S. ___, ___, 127 S.Ct. 1955, 1974 (2007).  A properly pleaded complaint must offer more than a formulaic recitation of the causes of action; it is not enough simply to leave open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery. Id. at 1964-1965, 1968.  Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  The court need not, however, accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact or unreasonable inferences. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).

II.     Motion for Judgment on the Pleadings

        Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Pleadings are closed upon the filing of a complaint and an answer, unless a counterclaim, cross-claim or third-party claim is interposed, or the court orders a third-party answer.  Wright & Miller, Federal Practice and

United States District Court

For the Northern District of California

4

Procedure: Civil 3d § 1367; see Fed. R. Civ. P. 7(a).  A Rule 12(c) judgment on the pleadings is a decision on the merits.  Gen. Conf. Corp. of Seventh Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989).

When Rule 12(c) is used to raise the defense of failure to state a claim, the motion faces the same test as a motion under Rule 12(b)(6).  Wood v. County of Alameda, 875 F. Supp. 659, 661 (N.D. Cal. 1995) (Henderson, J.), citing McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir.1988); see also Wright & Miller §§ 1367-1369.  Judgment on the pleadings is proper "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., 132 F.3d 526, 529 (9th Cir. 1997) (Schwarzer, S.J., sitting by designation), quoting George v. Pacific-CSC Work Furlough, 91 F.3d 1227, 1229 (9th Cir. 1996).  As in a Rule 12(b)(6) or Rule 56 motion, the court views the facts presented in the light most favorable to the non-moving party, construing all reasonable inferences in that party's favor.  See Seventh Day Adventists, 887 F.2d at 230 (9th Cir. 1989) (citation omitted).  "Courts have discretion to grant leave to amend in conjunction with 12(c) motions, and may dismiss causes of action rather than grant judgment." Moran v. Peralta Community College Dist., 825 F.Supp. 891, 893 (N.D. Cal. 1993) (Conti, J.), citing Amersbach v. City of Cleveland, 598 F.2d 1033, 1038 (6th Cir. 1979), declined to follow on other grounds by Radici v. Associated Ins. Companies, 217 F.3d 737, 745 (9th Cir. 2000).

DISCUSSION

I.    Target's Motion for Judgment on the Pleadings

As an initial matter, Whitson questions the timing of Target's present motion.  Defendant Bumbo-Pty has not yet answered the complaint.  Whitson cites Stands Over Bull v. Bureau of Indian Aff., 442 F. Supp. 360, 367 (D. Mont. 1977), for the proposition that Target's Rule 12(c) motion cannot be considered until *all* defendants have answered.

Rule 12(c) contains no such limitation, and Stands Over Bull is inapposite.  In that case, a defendant, which had itself not yet filed an answer, moved for judgment on the pleadings under Rule

5

United States District Court

For the Northern District of California

12(c), and the court denied the motion as unavailable before the pleadings were closed.  Id.  In this case, Target did file an answer before filing its Rule 12(c) motion.  It makes no sense to require Target to wait for co-defendant Bumbo-Pty's answer before allowing Target to file a Rule 12(c) motion, and plaintiff has cited no authority other than Stands Over Bull to support her contention.  Target's Rule 12(c) motion is proper, as is its motion to join in parts of Bumbo-Pty's 12(b)(6) briefing, as instructed by the court.

II.      Standing

Whitson has not alleged how or whether she used her Bumbo seat, nor has she alleged that she or a child on whose behalf she has standing to sue was injured by the seat.  Defendants argue that Whitson lacks Artricle III standing to sue.

Under Article III of the U.S. Constitution, the federal judicial power extends only to "cases" and "controversies."  U.S. Const., art. III, § 2, cl. 1.  Article III standing is thus a threshold requirement for federal court jurisdiction.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-560 (1992).  At a constitutional minimum, standing requires a party invoking federal jurisdiction to show that she has "suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury can be traced to the challenged action and is likely to be redressed by a favorable decision."  Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982) (citations and internal quotations omitted).  To satisfy the "injury in fact" requirement, the alleged harm must be "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  Lujan at 560 (citations and internal quotations omitted).  On a motion to dismiss, "general factual allegations of injury resulting from the defendant's conduct may suffice."  Id.

In her complaint, Whitson asserts ten separate causes of action for violations of state consumer protection laws, breach of express and implied warranties, and unjust enrichment.  The complaint itself is, in large part, a cut and paste job, asserting many causes of action (throwing everything against the wall and seeing what sticks) but alleging very few facts.  In particular,

6

Whitson does not allege that she or any child on whose behalf she has standing to sue actually used or was harmed by any defect in the Bumbo seat. Nor does she allege that she relied upon or even saw the images of children sitting in Bumbo seats on elevated surfaces. Her allegations amount to the following: (1) Whitson bought a Bumbo seat; (2) Defendants misrepresented the safety and intended uses of the Bumbo seat; and (3) Some children somewhere in the country were harmed while using the Bumbo seat; therefore, (4) Whitson, and a class of Bumbo seat purchasers that her lawyers would like her to represent, deserve damage awards. The nature of these allegations raises a serious question of whether Whitson has "suffered some actual or threatened injury" such that she has standing and this court has Article III jurisdiction to hear her case. See Valley Forge Christian College at 472.

Defendants argue that the instant action is best viewed as a "no-injury" product liability class action. Defendants point to cases in several circuits and districts, particularly Rivera v. Wyeth-Ayerst Laboratories, 283 F.3d 315 (5th Cir. 2002), and O'Neil v. Simplicity, Inc., 553 F. Supp. 2d 1110 (D. Minn. 2008), to support the proposition that, in the absence of manifest defect and injury, a plaintiff does not state a claim for causes of action related to products liability.[3] In Rivera, the plaintiffs had taken a pain medication that was later withdrawn from the market due to reports of liver failure in some patients. Rivera at 317. The plaintiffs did not allege that they themselves were injured, and in fact sought to represent a class of individuals who had ingested the drug but suffered *no* injury. Id. The plaintiffs asserted causes of action for violations of Texas consumer protection statutes, breaches of express and implied warranties, and unjust enrichment, based on plaintiffs' failure to receive the benefit of the bargain. Id. The court noted that there was no contract but held that even if there had been a contract, the court could not put the plaintiffs in the position they would have been in absent a breach, because they were not in a different position, i.e., they had no damages. Id. at 320. Rejecting the "benefit of the bargain" argument, the Rivera court dismissed the case for lack of standing:

> [C]onfusion arises from the plaintiffs' attempt to recast their product liability claim in the language of contract law. The wrongs they allege—failure to warn and sale of a defective product—are products liability claims. Yet, the damages they assert—benefit of the bargain, out of pocket expenditures—are contract law damages.

1        The plaintiffs apparently believe that if they keep oscillating between tort and
2        contract law claims, they can obscure the fact that they have asserted no concrete
         injury.  Such artful pleading, however, is not enough to create an injury in fact.

3    Id. at 320-321 (citation omitted).

4        Unlike the Rivera plaintiff, Whitson does not seek to represent a class specifically including

5    only those who have not been injured.  This does not, however, alter the requirement that Whitson

6    herself have standing before she can represent a class.  See Warth v. Seldin, 422 U.S. 490, 501

7    (1975) ("[T]he plaintiff still must allege a distinct and palpable injury to himself, even if it is an

8    injury shared by a large class of other possible litigants.").  Whitson attempts to distinguish Rivera

9    only by noting that there was an alternative basis for dismissal in that case (lack of causation, per the

10   learned intermediary doctrine), but she makes no argument that would undermine Rivera's rationale

11   regarding the absence of injury.  Instead, Whitson relies upon the holdings in Sanchez v. Walmart,

12   2008 U.S. Dist. LEXIS 70468 (E.D. Cal. 2008), and another case related to the Bumbo seat,

13   Mathison et al. v. Bumbo et al., Case No. SA CV08-0369 DOC (S.D. Cal. Aug. 18, 2008).  See

14   Docket Number 85 (Pf.'s RJN) (Mathison order).

15       In Sanchez, the plaintiff bought a stroller from Wal-Mart, alleging that she relied upon the

16   defendants' representations that the stroller was safe, easy to use, of merchantable quality, and fit for

17   its intended and reasonably foreseeable uses.  Sanchez at *2.  The plaintiff alleged that the

18   defendants had failed to adequately warn about a dangerous pinch point on the stroller that created

19   an "unreasonable potential for harm."  Id.  Sanchez did not allege that her child was hurt by the

20   stroller, but rather alleged that once she learned of the stroller's potential for harm, she was forced to

21   replace it, causing out-of-pocket expense.  Id.  The court found that Sanchez's allegations were

22   sufficient to confer standing for claims similar to those in the instant case, reasoning that there was

23   an issue of fact as to whether Sanchez "lost money" because she stopped using and eventually

24   replaced the defective product due to an unfair business practice.  Id. at *9-*10.  Sanchez is

25   distinguishable from the instant action, because Whitson has made no allegation that a purchase of a

26   substitute for her allegedly defective Bumbo seat was necessary.  Thus, Sanchez's rationale for

27   finding standing under a "benefit of the bargain" damages theory is inapplicable here.[4]

28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   Mathison is equally unhelpful to plaintiff.  In that case, the court *granted* the defendants'

2   motion to dismiss for lack of standing.  See Mathison at 18.  Plaintiff would have Mathison stand for

3   the broad proposition that anytime a plaintiff alleges purchase of a defective product and seeks

4   recovery of the purchase price, she has satisfied the injury element of Article III standing.  See Opp.

5   at 9.  This presents two problems.  First, the language relied upon by Whitson is dicta.  See Mathison

6   at 7 n.1.  Second, the Mathison dicta merely opines that one would have a valid claim if a good he

7   purchased "turned out to be defective."  Id.  The Mathison court explained later in the order that a

8   good is, as a matter of law, not defective where it serves its purpose without issue throughout its

9   useful life.  Id. at 13, citing, American Suzuki Motor Corp. v. Superior Court, 37 Cal. App. 4th 1291

10  (1994) (holding that class-action plaintiffs who suffered no injury or property damage and impliedly

11  conceded that their allegedly defective vehicles remained fit for their ordinary purpose cannot state a

12  cause of action for breach of implied warranty).  Like the Mathison plaintiffs, Whitson fails to allege

13  that her seat manifested the purported defect.

14      In summary, Whitson does not have standing for her claims under a "benefit of the bargain"

15  theory or any other stated theory.[5]  As in Rivera, the instant complaint oscillates between tort and

16  contract law language but fails to allege any actual injury.  As such, the complaint as alleged does

17  not meet the standing requirements of Article III, and this court cannot exercise jurisdiction.  Since

18  Whitson does not have standing, her motion to certify a class is moot.[6]

19

20  III.   Multistate Claims

21      There are alternative reasons why the complaint must be dismissed.  Regarding the multistate

22  claims, the complaint asserts four causes of action framed as nationwide class actions alleging

23  violations of each states' respective consumer protection laws, express and implied warranties laws,

24  and common law unjust enrichment standards.  It also asserts four "alternative" counts for similar

25  violations of California law only.

26      Conceding that defendant Bumbo "has raised a number of valid points," plaintiff states her

27  intent to abandon the four multistate claims, as well as the unjust enrichment claim against Target.

28

9

United States District Court
For the Northern District of California

1    Opp. at 4-5.  On this basis, the court will dismiss these four claims, which at any rate suffer from the

2    same defects, described below, as the six California claims.[7]

3

4    IV.    Heightened Pleading Standard

5           The complaint alleges "a pattern or generalized course of conduct repeated on many

6    occasions daily."  Complaint ¶ 76.  It also alleges "deceptive" and "fraudulent" practices, "unfair

7    competition, unfair, deceptive, untrue or misleading advertising," knowing misrepresentations,

8    knowing concealment of the Bumbo seat's alleged defects, and marketing of the Bumbo seat by

9    means of false and misleading information.  Id. ¶ 74, 75, 79, 87, 88, 95.

10          When a plaintiff alleges a unified course of conduct and relies entirely upon that course of

11   conduct as the basis of a claim, the claim is said to be "grounded in fraud" or "sound in fraud."  Vess

12   v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003).  Such claims must satisfy the

13   heightened pleading requirement of Federal Rule of Civil Procedure 9(b).  See id. at 1103-04; see

14   also Fed. R. Civ. Proc. 9(b) ("In alleging fraud or mistake, a party must state with particularity the

15   circumstances constituting fraud or mistake.").  Moreover, where a plaintiff pleads allegations of

16   fraud against more than one defendant, Rule 9(b) "requires that a plaintiff plead with sufficient

17   particularity attribution of the alleged misrepresentations or omissions to each defendant."  In re

18   Silicon Graphics, Inc. Sec. Litig., 970 F. Supp. 746, 752 (N.D. Cal. 1997) (Smith, J.).

19          Defendants argue, and plaintiff does not contest, that Rule 9(b)'s heightened pleading

20   requirement applies to its alternative claims.  Each of the claims relies upon a unified course of

21   deceptive conduct and as such "sounds in fraud."  Plaintiffs must, therefore, plead its allegations of

22   such conduct with particularity.  The operative complaint's allegations sounding in fraud are mere

23   conclusory statements and likely would not even meet the Rule 8 notice pleading standard

24   articulated by the Supreme Court in Twombly, were that the applicable standard.  See Twombly at

25   1974.  This is yet another ground for dismissal.

26

27

28

                                                      10

V.     Failure of Specific Asserted Claims

Whitson's first, second, and third alternative (California) causes of action respectively allege violation of the Unfair Competition Law, see Cal. Bus. & Prof. Code §§ 17200 *et seq.*; untrue and misleading advertising, see Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and violation of the Consumer Legal Remedies Act, see Cal. Civ. Code §§ 1750 *et seq.*  Whitson has not pled facts sufficient to support at least two of these claims.  The attempts to hang breach of implied warranty and unjust enrichment claims on Whitson's meager allegations likewise fail.

To allege a violation of the Unfair Competition Law (plaintiff's alternate count I), a plaintiff need not show that she relied on the defendant's misrepresentations, but she must allege an injury. Prior to the enactment of Proposition 64, a plaintiff could bring such a claim on behalf of the public in general, but "[r]ecently, Proposition 64 restricted UCL's standing requirement somewhat by requiring a private action be brought by 'any person who has suffered injury in fact and has lost money or property as a result of such unfair competition.'" Mathison at 17, quoting Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1152 n.7 (9th Cir. 2008); see Cal. Bus. & Prof. Code § 17204.  As noted, Whitson alleges no such injury.  Claims brought pursuant to the Consumer Legal Remedies Act (plaintiff's alternate count III) similarly require not only that the defendant's conduct was deceptive but that such conduct caused the plaintiff harm.  Massachusetts Mut. Life Ins. Co. v. Superior Court, 97 Cal. App. 4th 1282, 1292.

Whitson's breach of implied warranty claim suffers the same flaw as those of the Mathison plaintiffs: Whitson fails to allege a defect, i.e., that she or her children "personally suffered any injury or property damage, or that their seats tipped over." Mathison at 12.  Whitson has alleged only that Bumbo seats have a propensity to be unsafe to infants, not that her seat actually did so.[8] Where a product serves its purpose throughout its useful life, it is, as a matter of law, not "defective."  See id. at 12-14 (and cases cited therein).  Whitson also asserts a separate cause of action for unjust enrichment, but she, like the Mathison plaintiffs, does not allege any *facts* to show that Bumbo-Pty knew the Bumbo seats to be defective.  Her only allegation is that the Bumbo seat

11

United States District Court

For the Northern District of California

1    does not work properly 0.0028% of the time.  The court agrees with the <u>Mathison</u> court that such an

2    allegation, if true, would not provide a basis for an unjust enrichment claim.  <u>See</u> <u>Mathison</u> at 9.

3

4    VI.    <u>Leave to Amend</u>

5          Plaintiff has requested leave to amend, and defendants have argued for dismissal of the

6    claims with prejudice.  In determining whether it should grant leave to amend a complaint, a court

7    will consider (1) the plaintiff's bad faith; (2) undue delay; (3) prejudice to the defendant; (4) futility

8    of amendment; and (5) whether the plaintiff has previously amended his or her pleadings.  <u>Nunes v.</u>

9    <u>Ashcroft</u>, 375 F.3d 805, 808 (9th Cir. 2004), <u>citing</u> <u>Bonin v. Calderon</u>, 59 F.3d 815, 845 (9th Cir.

10   1995).  The court cannot confidently predict that an amendment will be futile, and Whitson has not

11   previously amended her pleadings.  Therefore, her complaint will be dismissed without prejudice.

12   Although the grant of a judgment on the pleadings typically results in entry of judgment, the court

13   has the discretion to instead dismiss with leave to amend.  <u>See</u> <u>Moran</u>, 825 F. Supp. at 893.[9]  Since

14   the problems with the complaint vis-à-vis Target do not materially differ from those vis-à-vis

15   Bumbo-Pty, plaintiff will be granted leave to amend her complaint as to both defendants.

16         There are, however, serious questions as to whether Whitson will be able to state a claim.  If

17   Whitson can identify a legally cognizable injury and can, consistent with her and her attorneys' Rule

18   11 obligations, remedy the defects discussed in this memorandum and order, she may file an

19   amended complaint.

20   ////

21   ////

22   ////

23   ////

24   ////

25   ////

26   ////

27   ////

28

United States District Court

For the Northern District of California

CONCLUSION

For the reasons stated above, defendant Bumbo-Pty's motion to dismiss is GRANTED. The court exercises its discretion to dismiss rather than enter judgment on defendant Target's motion for judgment on the pleadings.  Therefore, the complaint is DISMISSED with leave to amend as to both defendants.  Plaintiff SHALL file any amended complaint within THIRTY (30) DAYS of entry of this memorandum and order to avoid dismissal with prejudice and entry of judgment for defendants.

IT IS SO ORDERED.

Dated: April 15, 2009

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

13

United States District Court

For the Northern District of California

# **ENDNOTES**

1. Pursuant to Federal Rule of Evidence 201, the court takes judicial notice of the exhibits attached to the parties' requests for judicial notice.

2. The Lamm plaintiffs allege that their six month old son, Dylan, fell over and out of his Bumbo seat, which Dylan's father had placed on top of a table, striking his head and other parts of his body on the ground. Lamm Complaint ¶ 11. The Lamm plaintiffs allege that a friend gave the Bumbo seat to them as a baby shower gift, see id. at 11, and plaintiffs' attorneys have stated on the record that Whitson was the friend who bought the Bumbo seat for Dylan.

3. Defendants cite several other cases that support of this proposition. See, e.g., Weaver v. Chrysler Corp., 172 F.R.D. 96 (S.D.N.Y. 1997) (granting motion to dismiss where the plaintiff sought to represent a class of purchasers of vehicles equipped with an allegedly defective child seat where no personal injury or property damage was alleged); Williams v. Purdue Pharma. Co., 297 F. Supp. 2d. 171 (D.D.C. 2003) (holding that the plaintiffs lacked standing where they failed to allege particularized injury-in-fact through use of a prescription drug even though others in the proposed class had suffered adverse side effects).

4. Cole v. General Motors Corp., 484 F.3d 717 (5th Cir. 2007) is likewise distinguishable. In that case, the court found standing, holding that the plaintiffs sought recovery for actual economic harm (overpayment, loss in value, loss in usefulness) "emanating from the loss of their benefit of the bargain." Id. at 723. Cole explicitly discussed and distinguished Rivera on the basis that "[t]he Rivera plaintiffs did not assert economic harm emanating from anything other than potential physical harm." Id. Whitson has likewise alleged no independent economic harm, notwithstanding entirely conclusory statements. See, e.g., Complaint ¶ 47 ("Plaintiff and the Class have suffered actual economic loss because they did not receive the benefit of their bargain.").

5. It is worth noting that if Whitson could establish standing under a "benefit of the bargain" theory, she might render her case inappropriate for class-action treatment. See O'Neil at 1116, n.9 ("In order to prove whether purchasers received the benefit of their bargains, individualized proof would be required concerning a host of issues, including whether, and to what extent, each purchaser chose a crib solely due to its use of a drop side, and the amount paid by each purchaser.").

6. Were the court in a position to certify a class in this matter, it would be called upon to appoint class counsel. The quality of plaintiff's opposition brief calls into some question counsel's knowledge of the applicable law and the level of resources counsel would commit to representing the class. See Fed. R. Civ. Pro. 23(g)(1)(A).

7. Moreover, a nationwide class alleging violations of the laws of multiple jurisdictions would likely require at least one representative plaintiff from each jurisdiction to meet the class certification prerequisite set forth in Federal Rule of Civil Procedure 23(a)(4).

8. Through her reference to the October 25, 2007, CPSC release, Whitson has made precisely the same allegation as the Mathison plaintiffs: that there have been 28 reported cases in which the seats malfunctioned, out of about one million seats sold. This means that no malfunction is known to have been reported for approximately 99.9972% of the seats sold. See id. at 14.

9. The inclusion of the motion for judgment on the pleadings in the Federal Rules of Civil Procedure is a vestige of a time when the character of the summary judgment procedure and the scope of the Rule 12(b)(6) motion were unclear. Wright & Miller § 1369. It is appropriate to treat a Rule 12(c) motion in some instances like a Rule 12(b) motion and in some instances like a motion for summary judgment.